SANDRA J. HARRIS, Cal. Bar # 134153
THOMAS A. ZACCARO, Cal. Bar # 183241
KELLY BOWERS, Cal. Bar # 164007
MARTIN J. MURPHY, Cal. Bar # 130693
ANDREW J. DUNBAR, Cal. Bar # 203265

Attorneys for Plaintiff
Securities and Exchange Commission
Valerie Caproni, Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile:  (323) 965-3908

Priority ___
Send ✗
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

REED E. SLATKIN,

Defendant.

Case No. 01-4283 RSWL (MANx)

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ENTRY OF THE PRELIMINARY INJUNCTION AND OTHER RELIEF AGAINST DEFENDANT REED E SLATKIN

On May 18, 2001, the Court granted Plaintiff Securities and Exchange Commission's ("Commission") Application for Preliminary Injunction and Other Relief against Defendant Reed E. Slatkin ("Slatkin"). The Court now makes the following findings of fact and conclusions of law.

## I.

## FINDINGS OF FACT

The Court makes the following findings of fact:

1.    The Commission has instituted this action pursuant to Sections 20(b) and 21(d)(1) of the Securities Act of 1933 as amended ("Securities Act"), 15 U.S.C. §§ 78t(b) & 77t(d)(1), Sections 21(d) and 21(d)(3) of the Securities Exchange Act of 1934 as amended ("Exchange Act"), 15 U.S.C. §§ 78u(d) & 78u(d)(3), and

Findings of Fact and Conclusions of Law

JUN 1 8 2001

Section 209(d) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-9(d).

## A. The Defendant

2. Reed E. Slatkin ("Slatkin"), age 52, resides in Santa Barbara, California. Slatkin is not registered with the Commission as an investment adviser. Slatkin is a co-founder, substantial shareholder and, until he resigned on April 26, 2001, a director of Earthlink, Inc., a publicly traded Internet service provider. Slatkin has also been an ordained minister in the Church of Scientology since 1975. On May 1, 2001, Slatkin filed Chapter 11 bankruptcy.

## B. Slatkin's Purported Investment Advisory Business

3. From about 1985 to present, Slatkin purportedly invested other people's funds in securities.

4. As of September 1999, Slatkin had at least 500 clients with at least $230 million invested with Slatkin.

5. Slatkin represented to his clients that he used their funds to trade stocks for their behalf.

6. Slatkin sent his clients periodic account statements purporting to show that he was profitably managing their accounts by investing in securities.

7. Slatkin purportedly traded stock for his clients through a managed account in Switzerland held at an entity called "NAA Financial."

8. Slatkin purportedly had two accounts at NAA Financial, an account for his clients and a separate personal account in his own name. Slatkin purportedly opened the clients' account in 1987 with a deposit of approximately $7 to $8 million and opened his personal account in 1988 or 1989 with a deposit of approximately $12 to $15 million. According to Slatkin, these accounts had grown to $278 and $307 million, respectively, as of December 1999, primarily through his investing activities. According to Slatkin, after the 1987 deposit into the client NAA Financial account, he deposited subsequent client investments into an account he

controlled at a U.S. bank and made corresponding transfers between his personal NAA Financial account and the client's NAA Financial account

9.     Slatkin represented to the Commission that he began to wind down his advisory business in 1997 by systematically liquidating client accounts and produced past statements for accounts that he had closed.  Slatkin also represented to the Commission that he was transferring funds from the NAA Financial accounts to fund the liquidations.  Slatkin also purportedly sent his clients a letter dated January 7, 2000, advising them that he would be liquidating, or transferring to another adviser of the clients' choosing, the clients' accounts over the next several months.

## C.     Slatkin's Recent Conduct

10.     On February 20, 2001, a client invested $10 million with Defendant Slatkin, who promised to invest the funds in a money market fund in such a way that the client would receive a return 25 to 30 basis points higher than rates typically paid by money market funds.

11.     Defendant Slatkin misappropriated the $10 million that he had received from that client by using almost $6.975 million to pay other clients principal and earnings and using over $24,000 to pay his personal expenses, including credit cards bills, telephone and other utility bills, fees at two country clubs, and pool maintenance fees.

## D.     Slatkin's Fraudulent Scheme

12.     Slatkin represented to investors that he would invest their funds in securities that he deemed appropriate.  Slatkin has testified that he transferred investor funds to accounts he supposedly controlled at NAA Financial in Switzerland.

13.     Although Slatkin claims to have deposited investor funds in NAA Financial, neither NAA Financial nor these accounts appear to exist.  NAA Financial is not identifiable as a financial entity in Switzerland.  NAA Financial does not have offices at the building located at the address on Slatkin's NAA Financial account

statements. The Union Bank of Switzerland bank account into which NAA Financial purportedly transferred Slatkin's clients' assets does not currently exist.

14. In addition, from at least October 1, 1999 through September 29, 2000, Slatkin's bank account records reveal that he has made only three transfers (totaling approximately $251,000) into, and no withdrawals from, any accounts held by any financial institutions in Switzerland. Moreover, in response to a Commission administrative subpoena requesting such documents, Slatkin failed to produce any records concerning deposits or withdrawals he made with any Swiss financial institution.

15. Even though Slatkin represented and produced records to the Commission showing that he was liquidating all of his clients' accounts and transferring money from NAA Financial to fund the liquidations, Slatkin has not systematically liquidated his client accounts.

16. Slatkin did not send the January 7, 2000 letter to all of his clients and told (either directly or through people associated with him) clients who received the letter that he would not liquidate their accounts.

17. Slatkin has repaid clients only a small percentage of the amounted invested with him. From October 1, 1999, through September 29, 2000, Slatkin paid clients a total of $110 million but received approximately another $63.9 million from clients during the same period. This net $46.1 million pay out to clients represents only 20% of the $230 million that Slatkin admittedly had under management.

18. Slatkin also never transferred funds from any Swiss financial institution into his domestic bank accounts to fund the payments to clients.

19. Many clients whom Slatkin represented to the Commission as having no remaining balance, in fact, have not been repaid and believe that they have substantial balances with Slatkin.

20. Slatkin also has commingled investor funds with his personal funds.

21.    On May 1, 2001, Slatkin declared Chapter 11 bankruptcy and claimed assets of $50 to $100 million and debts of over $100 million.

## II.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

**A.    Jurisdiction**

1.    This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b) and 77v(a), Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa, and Sections 209(d) and 214 of the Advisers Act, 15 U.S.C. §§ 80b-9(d) and 80b-14.

2.    Defendant Slatkin, directly or indirectly, made use of the mails, means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, in connection with the transactions, acts, practices and courses of business set forth in the findings of fact.

3.    Pursuant to authority granted by Sections 10(b) and 23(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) & 78w(a), the Commission has promulgated Rule 10b-5, 17 C.F.R. § 240.10b-5, which was in effect at all times relevant herein and is now in effect.

**B.    Defendant Slatkin Acted As An Unregistered Investment Adviser**

4.    Defendant Slatkin, by engaging in the conduct described in the findings of fact, directly or indirectly, engaged in the business of advising clients, for compensation, as to the value of securities and as to the advisability of investing in, purchasing, or selling securities, and therefore, was an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

5.    The term "compensation" has been broadly construed to include any economic benefit paid directly or indirectly to an adviser, including a misappropriation of client funds. In re Steadman Security Corp., 46 S.E.C. 896, 910

n. 38 (1977), aff'd and remanded on other grounds, 603 F.2d 1126 (5th Cir. 1979), aff'd, 450 U.S. 91 (1981).

6.      Defendant Slatkin has never been registered with Plaintiff Commission as an investment adviser.

7.      Defendant Slatkin, by engaging in the conduct described in the findings of fact, made use of the mails or any means or instrumentality of interstate commerce in connection with his business as an investment advisor in violation of Section 203(a) of the Advisers Act, 15 U.S.C. § 80b-3(a).

**C.      Defendant Slatkin Violated the Antifraud Provisions of Section 17(a) Of The Securities Act, Section 10(b) Of The Exchange Act And Rule 10b-5 Thereunder, And Sections 206(1) And 206(2) Of The Advisers Act**

8.      Defendant Slatkin, in the offer and sale and in connection with the purchase and sale of securities, misrepresented material facts to the public, including investors, as set forth in the findings of fact.

9.      Defendant Slatkin, in the offer and sale and in connection with the purchase and sale of securities, omitted to state material facts to the public, including investors, as set forth in the findings of fact.

10.     Defendant Slatkin, while acting as an investment adviser, misrepresented material facts to his clients or prospective clients.

11.     Defendant Slatkin, while acting as an investment adviser, omitted to state material facts to his clients or prospective clients.

12.     The misrepresentations and omissions set forth in the findings of fact were material. Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988); TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438 (1976).

13.     The misrepresentations and omissions set forth in the findings of fact were made "in the offer and sale" and "in connection with the purchase and sale" of securities. Securities Act § 17(a), 15 U.S.C. § 77q(a); SEC v. Rana Research, Inc., 8 F.3d 1358, 1362 (9th Cir. 1993).

Findings of Fact and Conclusions of Law

14.   Defendant Slatkin acted knowingly and intentionally, or at least recklessly, with respect to the conduct set forth in the findings of fact.  Aaron v. SEC, 446 U.S. 680, 701-702 (1980); Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-1569 (9th Cir. 1990) (en banc), cert. denied, 499 U.S. 976 (1991); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1089 n.3 (2d Cir. 1972).

15.   Defendant Slatkin, by engaging in the conduct described in the findings of fact, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or the mails, with scienter, employed devices, schemes or artifices to defraud, in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

16.   Defendant Slatkin, by engaging in the conduct described in the findings of fact, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or the mails, obtained money or property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engaged in transactions, practices and courses of business which operated or would operate as a fraud or deceit upon the purchaser, in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) & 77q(a)(3).

17.   Defendant Slatkin, by engaging in the conduct described in the findings of fact, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter, employed devices, schemes or artifices to defraud, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engaged in acts, practices and courses of business which operated  or would operate as a fraud or deceit upon persons, in violation of Section

10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

18.   Defendant Slatkin, by engaging in the conduct described in the findings of fact, while acting as an investment adviser, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter, employed devices, schemes or artifices to defraud clients and prospective clients, in violation of Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

19.   Defendant Slatkin, by engaging in the conduct described in the findings of fact, while acting as an investment adviser, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon his clients and prospective clients in violation of Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

C.   **Entry Of A Preliminary Injunction Freezing Assets And Other Relief Is Necessary And Appropriate**

20.   In determining the need and propriety of issuing a preliminary injunction, Courts determine whether the moving party has shown either:  (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. United States v. Nutri-Cology, Inc., 982 F.2d 394, 397 (9th Cir. 1992).

21.   In statutory enforcement cases, such as the instant case, where the Government can show a probability of success on the merits, irreparable injury will be presumed. Nutri-Cology, 982 F.2d at 398.

22.   The Commission faces a lower burden than a private litigant when seeking a temporary restraining order or a preliminary injunction. SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975).

23. To obtain an asset freeze, the Commission need only establish that it is likely to succeed on the merits of its claims. SEC v. Cavanagh, 155 F.3d 129, 132 (2d Cir. 1998).

24. An order freezing assets may be imposed even in the absence of a preliminary injunction. SEC v. Unifund SAL, 910 F.2d 1028, 1037 (2d Cir. 1990).

25. To obtain an injunction, the Commission must establish that future violations are likely. SEC v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). In predicting the likelihood of future violations, courts evaluate the totality of the circumstances. Murphy, 626 F.2d at 655; SEC v. Koracorp Indus. Inc., 575 F.2d 692, 699 (9th Cir.), cert. denied, 439 U.S. 953 (1978).

26. In determining the likelihood of future violations, the Court has assessed the totality of the circumstances, the existence of past violations, the degree of scienter involved, the isolated or recurrent nature of the infraction, Defendants' recognition of the wrongful nature of their conduct, the likelihood, because of Defendants' occupation, that future violations might occur, and the sincerity of their assurances against future violations. SEC v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980).

27. The Court finds preliminarily that, unless an injunction is granted, there is a reasonably likelihood that Defendant Slatkin will engage in further violations of Sections 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 and Sections 203(a), 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-3(a), 80b-b(1) and 80b-b(2).

28. The Commission has demonstrated a probability of success on the merits in this action.

29. Based on the facts contained in the findings of fact, the Court finds that an asset freeze as to Slatkin is necessary and appropriate.

Findings of Fact and Conclusions of Law

30.    Based on the facts contained in the findings of fact, the Court finds that an order prohibiting the destruction of documents is necessary and appropriate.

31.    Every finding of fact contained in the foregoing conclusions of law shall be deemed a finding of fact as if set forth as a finding of fact.

DATED:    JUN 1 5 2001

RONALD S W LEW

THE HON. RONALD S.W. LEW
UNITED STATES DISTRICT COURT JUDGE

Presented By:

Andrew J. Dunbar
Attorney for Plaintiff
Securities and Exchange Commission

Findings of Fact and Conclusions of Law

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

[X]   U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036.

Telephone: (323) 965-3998 Fax: (323) 965-3908

On June 5, 2001, I served the document entitled **[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ENTRY OF THE PRELIMINARY INJUNCTION AND OTHER RELIEF AGAINST DEFENDANT REED E. SLATKIN** upon the parties to this action addressed as stated on the attached service list:

[X]   **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ]   **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ]   **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]   **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee.

[ ]   **FEDERAL EXPRESS:** By placing in sealed envelope(s) designated by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express or delivered to a Federal Express courier, at Los Angeles, California.

[ ]   **FAX (BY AGREEMENT ONLY):** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

[X]   **(Federal)** I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made. I declare under penalty of perjury that the foregoing is true and correct.

Date:   June 5, 2001                     _Magnolia M. Marcelo_
                                          MAGNOLIA M. MARCELO

1

<u>**SEC v. REED E. SLATKIN**</u>
**United States District Court – Central District of California**
**Case No. 01-4283 RSWL (MANx)**
**(LA-1961)**

## <u>SERVICE LIST</u>

Brian A. Sun, Esq.
Frederick D. Friedman, Esq.
O'Neill, Lysaght & Sun
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
*Attorney for Defendant Reed E. Slatkin*